Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
Yufei Wang (SBN 346170)
*ywang@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: 917.336.0171
Facsimile: 917.336.0177

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| IAN GOMEZ and JOHN WHALEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTER-CON SECURITY SYSTEMS, INC.,<br><br>Defendant. | Case No. 2:26-cv-7351<br><br>**CLASS ACTION COMPLAINT**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Ian Gomez and John Whalen ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to themselves and on information and belief as to all other matters, by and through undersigned counsel, bring this Class Action Complaint against Defendant Inter-Con Security Systems, Inc. ("Inter-Con" or "Defendant").

## NATURE OF THE ACTION

1. Plaintiffs bring this class action individually and on behalf of all other individuals who had their highly sensitive personal and financial information, including but not limited to full names, addresses, Social Security numbers, employer identifiers, wage and compensation data, detailed tax withholding information, and other personally identifiable information (collectively, "PII" or "Personal Information") disclosed to unauthorized third parties during a data breach compromising Inter-Con's systems in June 2026 (the "Data Breach").

2. Inter-Con is one of the largest privately held security services companies in the world. Inter-Con provides security services to Fortune 500 companies, public utilities, airports, critical infrastructure, and federal, state, and local government agencies throughout the United States and internationally.[1]

3. On or about June 18, 2026, the ransomware and extortion group known as ShinyHunters publicly claimed responsibility for compromising Inter-Con's network and announced that it had stolen approximately 2.7 million records and internal corporate data.[2] The threat actors further warned that they intended to publish the stolen information if Inter-Con failed to comply with their demands.[3]

---

[1] *About Us*, Inter-Con Security Systems, https://icsecurity.com/company/history/ (last visited July 5, 2026).

[2] *See, e.g.,* DEXpose*, ShinyHunters Compromise ICSecurity in Major Ransomware Attack* (June 19, 2026), https://www.dexpose.io/shinyhunters-compromise-ic-security-in-major-ransomware-attack/; Lunar Cyber*, ICSecurity.com,* Breach Catalog*,* https://lunarcyber.com/breach-catalog/icsecurity-com/ (last visited July 7, 2026).

[3] *See id.*

4. Defendant was well aware of, or should have known of, its data security shortcomings. Defendant routinely collects, stores, and maintains sensitive Personal Information from its current and former employees, including Social Security numbers, for payroll, tax reporting, and business operations. Defendant requires its employees to provide this information as a condition of employment.

5. Defendant knew and understood the importance of safeguarding Personal Information entrusted to it by Plaintiffs and Class members, and the foreseeable consequences of its data security systems being breached. This includes the significant costs imposed on Plaintiffs and Class members as a result of a breach. Despite this, Defendant did not take adequate cybersecurity measures to prevent the Data Breach.

6. Defendant's failures to ensure that its servers and systems were adequately secure fell far short of its obligations and Plaintiffs' and Class members' reasonable expectations for data privacy jeopardized the security of Plaintiffs' and Class members' Personal Information, and exposed Plaintiffs and Class members to fraud and identity theft or the serious risk of fraud and identity theft.

7. As a result of Defendant's conduct and the resulting Data Breach, Plaintiffs and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, they have either suffered fraud or identity theft or face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## PARTIES

***Plaintiff Ian Gomez***

8. Plaintiff Ian Gomez is an adult citizen of the state of New Jersey and resides in Essex County, New Jersey. Mr. Gomez was employed by Defendant from approximately 2023 through 2024. As a condition of his employment, Defendant required him to provide highly sensitive PII, including his name, address, telephone number, email

address, Social Security number, and banking information for payroll purposes. Upon information and belief, Mr. Gomez's PII was compromised in the Data Breach.

9. Following public reports of the Data Breach, Mr. Gomez received multiple emails purporting to originate from individuals associated with the attack. Those emails referenced Inter-Con, demanded approximately $2,000 in cryptocurrency, and claimed that the sender had compromised his device and possessed information concerning his online activities. Concerned that his Personal Information had been exposed, Mr. Gomez changed his passwords and undertook additional efforts to protect his personal accounts. At the time he received the extortion emails, Defendant had not provided him with notice that his PII may have been compromised. Mr. Gomez has incurred, and continues to incur, time and effort monitoring his accounts and protecting himself against identity theft and fraud.

***Plaintiff John Whalen***

10. Plaintiff John Whalen is an adult citizen of the state of Texas and resides in Harris County, Texas. Mr. Whalen was employed by Defendant from approximately 1994 through 2002. As a condition of his employment, Defendant required him to provide highly sensitive PII, including his name, address, telephone number, email address, Social Security number, and banking information for payroll purposes.

11. On or about June 23, 2026, Mr. Whalen received a written Notice of Data Security Incident from Defendant informing him that his Personal Information may have been impacted as a result of unauthorized access to Inter-Con's network environment. According to the notice, the compromised information may include, among other things, Mr. Whalen’s first name, last name, and Social Security number. Defendant offered twelve months of complimentary credit monitoring and fraud assistance services through CyberScout. Before receiving the notice, Mr. Whalen experienced increased spam emails, telephone calls, and text messages and has incurred, and continues to incur, time and effort monitoring his accounts and protecting himself against identity theft and fraud.

***Defendant Inter-Con Security Systems, Inc.***

12. Defendant Inter-Con Security Systems, Inc. is a corporation organized under the laws of the State of California, with its principal place of business located at 210 S De Lacey Ave. Pasadena, California 91105.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (a) there are 100 or more members in the proposed class; (b) members of the proposed class have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of $5,000,000, exclusive of interest and costs.

14. This Court has personal jurisdiction over Defendant because Defendant is incorporated in California, maintains its principal place of business in this District, purposefully directs its business activities toward this District, and the conduct giving rise to Plaintiffs' claims occurred, in substantial part, within this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District, maintains its corporate headquarters in Pasadena, California, and a substantial part of the events and omissions giving rise to the claims asserted herein occurred within this District.

**FACTUAL ALLEGATIONS**

**A. Defendant Collects and Stores Personal Information**

16. Inter-Con Security Systems, Inc. is one of the largest privately held security services companies in the world. Founded in 1973 and headquartered in Pasadena, California, Inter-Con provides physical security, risk management, emergency response, investigations, executive protection, and security consulting services to Fortune 500 companies, public utilities, airports, educational institutions, healthcare facilities, and

federal, state, and local government agencies throughout the United States and internationally.[4]

17. As a condition of employment, Defendant requires employees, including Plaintiffs and Class members, to provide highly sensitive Personal Information, including information necessary for payroll processing and tax reporting. This information includes, but is not limited to: full legal names, Social Security numbers, dates of birth, home addresses, wage and compensation information, and federal and state withholding information. Upon information and belief, Defendant stores this information electronically.

18. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class members' Personal Information, Defendant assumed legal and equitable duties, and knew or should have known of its obligations to protect Plaintiffs' and Class members' Personal Information from unauthorized disclosure.

19. Defendant expressly recognized its obligation to safeguard personal information. In its publicly available Privacy Policy, Defendant represents that it has "implemented commercially reasonable security measures designed to protect your personal information from unauthorized access, use, or disclosure."[5]

20. Plaintiffs and Class members relied on Defendant to keep their Personal Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

21. Plaintiffs and Class members provided their Personal Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

---

[4] *About Us*, Inter-Con Security Systems, https://icsecurity.com/company/history/ (last visited July 5, 2026).

[5] *Privacy Policy,* Inter-Con Security Systems, https://icsecurity.com/privacy-policy/ (last visited July 5, 2026).

**B. <u>The Data Breach</u>**

22. On information and belief, despite collecting and maintaining the highly sensitive PII of its current and former employees, Defendant Inter-Con failed to implement and maintain reasonable administrative, technical, and physical safeguards to prevent unauthorized actors from infiltrating its network, accessing confidential employee information, and exfiltrating that information from its systems.

23. On or about June 18, 2026, the ransomware and extortion group known as ShinyHunters publicly claimed responsibility for a cyberattack targeting Inter-Con. On its dark web leak site, ShinyHunters announced that it had successfully compromised Inter-Con's network and exfiltrated approximately 2.7 million records, including internal corporate files and employee information.[6]

24. According to the threat actors' public posting, the stolen data included confidential corporate information and employee records maintained by Defendant. ShinyHunters further asserted that it possessed sufficient information to publicly release the stolen data if Defendant failed to satisfy its demands.[7]

25. ShinyHunters reportedly issued what it characterized as a "final warning," directing Defendant to establish contact before a specified deadline or risk public dissemination of the stolen information. The posting indicated that, absent compliance, the cybercriminals intended to release the entirety of the exfiltrated dataset to other threat actors and the broader criminal ecosystem.

26. Public reporting concerning the Data Breach is also consistent with ShinyHunters' established methods. Government and private-sector threat intelligence

---

[6] *See, e.g.,* DEXpose, *ShinyHunters Compromise ICSecurity in Major Ransomware Attack* (June 19, 2026), https://www.dexpose.io/shinyhunters-compromise-ic-security-in-major-ransomware-attack/; Lunar Cyber, *ICSecurity.com,* Breach Catalog, https://lunarcyber.com/breach-catalog/icsecurity-com/ (last visited July 7, 2026).

[7] *Id.; see also* Hackmanac (@H4ckmanac), X (June 18, 2026), https://x.com/H4ckmanac/status/2067644744893624364 (last visited July 5, 2026); Travis Yeargan, Facebook (June 18, 2026), https://www.facebook.com/travis.yeargan/posts/27772785975638754 (last visited July 5, 2026).

have documented that ShinyHunters routinely conducts large-scale data theft and extortion campaigns by exfiltrating sensitive information, threatening public disclosure, and using extortion emails, text messages, and other pressure tactics to coerce payment.[8]

27. Upon information and belief, the threat actors subsequently published sample files from the stolen dataset to substantiate their claims and increase pressure on Defendant. Once sensitive information is published or otherwise made available on a ransomware leak site, it can be copied, redistributed, downloaded, sold, and republished indefinitely by unrelated third parties, substantially increasing the likelihood of identity theft, financial fraud, phishing attacks, and other malicious activity.

28. Upon information and belief, Defendant did not publicly disclose the Data Breach until after the threat actors had already announced the attack and threatened public release of the stolen information. Plaintiffs are informed and believe that Defendant likewise did not promptly notify all affected current and former employees immediately after discovering, or reasonably should have discovered, the unauthorized access to its systems.

29. Timely notification following a data breach is critical because it enables affected individuals to change passwords, monitor financial accounts, place fraud alerts or security freezes, replace compromised credentials where possible, and take other measures to mitigate the risk of identity theft. Delayed notification deprives victims of the opportunity to meaningfully protect themselves while cybercriminals continue to exploit stolen information.

30. Defendant was well aware of or should have known of its data security shortcomings. Defendant routinely collects, stores, and maintains sensitive Personal Information from its current and former employees, including Social Security numbers, for payroll, tax reporting, and business operations. Defendant requires employees to provide this information as a condition of employment.

---

[8] DataBreach.com, *ICSecurity.com (2026)*, https://databreach.com/breach/icsecurity-com-2026 (last visited July 7, 2026).

31. Defendant knew and understood the importance of safeguarding Personal Information entrusted to it by Plaintiffs and Class members, and the foreseeable consequences of its data security systems being breached. This includes the significant costs imposed on Plaintiffs and Class members as a result of a breach. Despite this, Defendant did not take adequate cybersecurity measures to prevent the Data Breach.

32. Unauthorized individuals can now easily access the Personal Information of Plaintiffs and Class members.

33. Defendant failed to employ reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiffs and Class members. Appropriate measures include encrypting the information and deleting information when the information is no longer needed. Defendant's failures allowed cybercriminals to obtain and expose the Personal Information of Plaintiffs and Class members.

### C. <u>Defendant Failed to Comply With Industry Standards</u>

34. Several best practices have been identified that at minimum should be implemented by Defendant, including, but not limited to, educating all employees; creating strong passwords; adopting multi-layer security measures, including firewalls, anti-virus, and anti-malware software; encryption, or making data unreadable without a key; multi-factor authentication; creating backup data; and limiting which employees can access sensitive data.

35. Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

36. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without

limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC).

37. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[9]

38. To prevent and detect cyberattacks and/or ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share

[9] *How to Protect Your Networks from RANSOMWARE*, <https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view> (last visited Apr. 16, 2025).

permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

39. To prevent and detect cyberattacks, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- Update and patch your computer. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- Use caution with links and when entering website addresses. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- Open email attachments with caution. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- Keep your personal information safe. Check a website's security to ensure the information you submit is encrypted before you provide it….
- Verify email senders. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email.
- If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.
- Inform yourself. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.
- Use and maintain preventative software programs. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic[10]….

40. To prevent and detect cyberattacks or ransomware attacks, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other

[10] America's Cyber Defense Agency, *Protecting Against Ransomware*, CISA (original release date Apr. 11, 2019), <https://www.cisa.gov/news-events/news/protecting-against-ransomware>.

endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[11]

41. Given that Defendant was storing the Personal Information of Plaintiffs and Class members, Defendant could and should have implemented all the above measures to prevent and detect cyberattacks.

42. These foregoing frameworks are existing and applicable industry standards for reasonable cybersecurity readiness and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

43. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Personal Information of an undisclosed number of individuals, including Plaintiffs and Class members.

---

[11] Microsoft Threat Intelligence, *Human-operated ransomware attacks: A preventable disaster*, Microsoft (Mar 5, 2020), <https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/>.

**D. <u>Impact of the Data Breach</u>**

44. The actual extent and scope, and the impact, of the Data Breach on Defendant's current and former employees remain uncertain. Unfortunately for Plaintiffs and Class members, the damage is already done because their sensitive Personal Information has been disclosed to unauthorized persons during the Data Breach.

45. Defendant knew or should have known that its IT systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive Personal Information. On information and belief, Defendant failed to employ reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining, exposing its employees' Personal Information to the risk of theft, identity theft, and fraud.

46. Some of the harm caused to Plaintiffs and Class members by the Data Breach has already been suffered, with additional harm imminent in the wake of the Data Breach.

47. The Data Breach creates a heightened security concern for Plaintiffs and Class members because their SSNs, financial information, and other sensitive information were potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

48. Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[12] TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have

---

[12] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[13]

49. In addition, threat actors seek out driver's license numbers because they are highly valuable pieces of personal information. A driver's license number can be a critical part of a fraudulent, synthetic identity, with reports indicating that the going rate for a stolen identity is about $1,200 on the dark web, and that a stolen or forged driver's license, alone, can sell for around $200.[14] Driver's license numbers are particularly useful to identity thieves for applying for unemployment or other government benefits.

50. Defendant had a duty to keep Plaintiffs' and Class members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiffs and Class members provided their Personal Information to Inter-Con with the understanding that Inter-Con would comply with its obligations to keep such information confidential and secure from unauthorized disclosures.

51. Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in Defendant's industry.

**D. <u>Theft of Personal Information Has Serious Consequences for Victims</u>**

52. Data breaches are by no means new and they should not be unexpected. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[15] It is well known amongst companies that store sensitive personally

---

[13] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[14] Lee Mathews, *Hackers Stole Customers' License Numbers From Geico In Months-Long Breach,* FORBES (Apr. 20, 2021), https://www.forbes.com/sites/leemathews/2021/04/20/hackers-stole-customers-license-numbers-from-geico-in-months-long-breach/?sh=146576a68658.

[15] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

53. These types of attacks should be anticipated by companies that store sensitive and personally identifying information, like Inter-Con, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

54. Theft of Personal Information is serious. The Federal Trade Commission has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive benefits, start new utility accounts, and incur charges and credit in a person's name.[16]

55. Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive benefits in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[17]

56. According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card

---

[16] *See What to Know About Identity Theft*, Federal Trade Commission Consumer Information, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Sept. 2, 2025).
[17] *See Warning Signs of Identity Theft*, Federal Trade Commission, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Sept. 2, 2025).

number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[18]

57. Personal Information is a valuable property right.[19] The value of sensitive personal information as a commodity is measurable.[20] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[21]

58. Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

59. Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

---

[18] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[19] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…").

[20] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, Medscape.com (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[21] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLibrary (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

60. Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[22]

61. There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[23]

62. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[24]

63. It is within this context that Plaintiffs and all other Class members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**E. Defendant Failed to Act in the Face of a Known Risk of a Data Breach**

64. Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Defendant failed to take reasonable steps to adequately protect Personal Information, leaving its employees exposed to risk of fraud and identity theft.

---

[22] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) Information Systems Research 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[23] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[24] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, Identity Theft Resource Center (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

65. Inter-Con is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with business operations is highly sensitive. Inter-Con requires its employees to provide PII in connection with employment-related services and business operations. As a company that collects, retains, and uses employee PII for its own business purposes, Inter-Con was aware of the importance of safeguarding that information and protecting its systems from security vulnerabilities.

66. Inter-Con was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information was adequately secured.

67. Despite the well-known risks of hackers and cybersecurity intrusions, Inter-Con failed to employ adequate data security measures or in a meaningful way in order to prevent breaches, including the Data Breach.

68. The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, Defendant could have prevented the Data Breach.

69. Defendant permitted Class members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

70. Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[25]

71. As a result of the events detailed herein, Plaintiffs and Class members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from

---

[25] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, Reuters (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

72. Victims of the Data Breach have likely already experienced harms and are subject to an imminent and ongoing risk of harm, including identity theft and fraud.

73. As a result of Defendant's failure to ensure that the impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiffs' and Class members' privacy have been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

74. Plaintiffs bring this action individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of themselves and the following Class:

> **Nationwide Class**
> All citizens of the United States whose Personal Information was compromised as a result of the Data Breach.

75. Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

76. The Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and (b)(3) for all of the following reasons.

77. Numerosity. Although the exact number of Class members is uncertain, and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable, believed to amount to hundreds of thousands of individuals. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and the Court. Information concerning the exact size of the putative class is within the possession of Defendant. The parties will be able to identify each member of the Class through discovery, including through Defendant's document production and/or related discovery.

78. Commonality. There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a. Whether and to what extent Defendant had a duty to protect Plaintiffs' and Class members' PII.

b. Whether Defendant breached its duty to protect Plaintiffs' and Class members' PII.

c. Whether Defendant's data security systems prior to the Data Breach met the requirements of relevant laws;

d. Whether Defendant's data security systems prior to the Data Breach met industry standards;

e. Whether Defendant owed duties to prevent the dissemination of stolen PII;

f. Whether Defendant breached those duties by failing to take adequate measures to prevent the spread of Plaintiffs' and Class members' PII;

g. Whether the actions and or/inaction of Defendant caused Plaintiffs' and Class members' PII to be disclosed or compromised;

h. Whether Defendant was negligent;

i. Whether Plaintiffs and other Class members are entitled to injunctive relief; and

j. Whether Plaintiffs and other Class members are entitled to damages as a result of Defendant's conduct.

79. Typicality. All of Plaintiffs' claims are typical of the claims of the proposed Class they seek to represent in that: Plaintiffs' claims arise from the same practice or course of conduct that forms the basis of the Class claims; Plaintiffs' claims are based upon the same legal and remedial theories as the proposed Class and involve similar factual circumstances; there is no antagonism between the interests of Plaintiffs and absent Class members; and the injuries that Plaintiffs suffered are similar to the injuries that Class members have suffered.

80. Adequacy. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel experienced in complex class action litigation, including data breach and consumer protection cases. Plaintiffs have no interests that are contrary to or in conflict with those of the Class.

81. Predominance. The proposed class action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions which may affect only individual Class members.

82. Superiority. The proposed class action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member. Absent a class action, the majority of Class Members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

83. Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Defendant. Varying adjudications could establish

incompatible standards with respect to: whether Defendant's ongoing conduct violates the claims alleged herein; and whether the injuries suffered by Class members are legally cognizable, among others. Prosecution of separate actions by individual Class members would also create a risk of individual adjudications that would be dispositive of the interests of other Class members not parties to the individual adjudications, or substantially impair or impede the ability of Class members to protect their interests.

84. Injunctive Relief. This action also satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate with respect to the Class as a whole. Class members continue to face ongoing harm from the exposure of their PII and require injunctive relief to address Defendant's inadequate security practices, breach response, and failure to prevent ongoing dissemination of highly sensitive PII.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiffs and the Nationwide Class)**

85. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

86. Defendant was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiffs and Class members.

87. Defendant knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiffs and Class members, and to not ensuring that its servers and systems, and the Personal Information contained therein, were secure. These risks were reasonably foreseeable to Defendant.

88. Defendant owed duties of care to Plaintiffs and Class members whose Personal Information had been entrusted to it.

89. Defendant breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate data security. Defendant had a duty to safeguard Plaintiffs' and Class members' Personal Information and to ensure that it adequately

protected Personal Information. Defendant breached this duty.

90. Defendant's duty of care arises from its knowledge that its employees entrust it with highly sensitive Personal Information that Defendant is required to, and represents that it will, handle securely.

91. Only Defendant was in a position to ensure that its systems and servers were sufficient to protect against breaches and the harms that Plaintiffs and Class members have now suffered.

92. A "special relationship" exists between Defendant, on the one hand, and Plaintiffs and Class members, on the other hand. Defendant entered into a "special relationship" with Plaintiffs and Class members by agreeing to accept, store, and have access to sensitive Personal Information provided by Plaintiffs and Class members in connection with their employment.

93. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class members, Plaintiffs and Class members would not have been injured.

94. Defendant acted with wanton disregard for the security of Plaintiffs' and Class members' Personal Information.

95. The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known it was failing to meet these duties, and that the Data Breach would cause Plaintiffs and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

96. As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class members have been harmed and face an imminent and ongoing risk of harm.

97. As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiffs and the Nationwide Class)**

98. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

99. Defendant breached its duties to Plaintiffs and Class members by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the Personal Information it maintained.

100. Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

101. But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and Class members, Plaintiffs and Class members would not have been injured.

102. The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known that it was failing to meet its duties, and that a breach would cause Plaintiffs and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

103. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have been harmed and face an imminent and ongoing risk of harm.

104. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Nationwide Class)**

105. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

106. Plaintiffs and Class members provided their Personal Information to Defendant in connection with their employment.

107. In connection with their business relationship, Plaintiffs and Class members entered into implied contracts with Defendant.

108. Pursuant to these implied contracts, Plaintiffs and Class members provided Defendant with their Personal Information. In exchange, Defendant agreed, among other things: (1) to take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class members' Personal Information; and (2) to protect Plaintiffs' and Class members' Personal Information in compliance with the applicable laws, regulations, and industry standards.

109. The protection of Personal Information was a material term of the implied contracts between Plaintiffs and Class members, on the one hand, and Defendant, on the other hand. Had Plaintiffs and Class members known that Defendant would not adequately protect its current and former employees' Personal Information, they would not have sought employment with Defendant.

110. Plaintiffs and Class members performed their obligations under the implied contracts when they provided Defendant with their Personal Information.

111. Necessarily implicit in the agreements between Plaintiffs and Class members and Defendant was Defendant's obligation to take reasonable steps to secure and safeguard Plaintiffs' and Class members' Personal Information.

112. Defendant breached its obligations under the implied contracts with Plaintiffs and Class members by failing to implement and maintain reasonable security measures to protect their Personal Information.

113. Defendant's breach of its obligations under the implied contracts with Plaintiffs and Class members directly resulted in the Data Breach.

114. The damages sustained by Plaintiffs and Class members as described above were the direct and proximate result of Defendant's material breaches of its agreements.

115. Plaintiffs and other Class members were damaged by Defendant's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for

protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; and/or (vi) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

**COUNT IV**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and the Nationwide Class)**

116. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

117. A relationship existed between Plaintiffs and Class members and Defendant in which Plaintiffs and Class members put their trust in Defendant to protect the Personal Information of Plaintiffs and Class members and Defendant accepted that trust.

118. Defendant breached the fiduciary duties that it owed to Plaintiffs and Class members by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the Personal Information of Plaintiffs and Class members.

119. Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiffs and Class members.

120. But for Defendant's breach of fiduciary duty, the damage to Plaintiffs and Class members would not have occurred.

121. Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiffs and Class members.

122. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiffs are entitled to, and demand, actual, consequential, and nominal damages, and injunctive relief.

**COUNT V**
**Invasion of Privacy (Intrusion Upon Seclusion)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

123. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

124. Plaintiffs and Class members had a reasonable expectation of privacy in the Personal Information that Defendant disclosed without authorization.

125. By failing to keep Plaintiffs' and Class members' Personal Information safe, knowingly employing inadequate data privacy policies and protocols, and disclosing Personal Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiffs' and Class members' privacy by, *inter alia*:

a. intruding into Plaintiffs' and Class members' private affairs in a manner that would be highly offensive to a reasonable person; and

b. invading Plaintiffs' and Class members' privacy by improperly using their Personal Information properly obtained for a specific purpose for another purpose, or disclosing it to some third party;

c. failing to adequately secure Personal Information from disclosure to unauthorized persons;

d. enabling the disclosure of Plaintiffs' and Class members' Personal Information without consent.

126. Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' and Class members' position would consider its actions highly offensive.

127. Defendant knew that its IT systems and servers were vulnerable to data breaches prior to the Data Breach.

128. Defendant invaded Plaintiffs' and Class members' right to privacy and intruded into Plaintiffs' and Class members' private affairs by disclosing their Personal Information to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

129. As a proximate result of such unauthorized disclosures, Plaintiffs' and Class members' reasonable expectations of privacy in their Personal Information were unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiffs' and Class members' protected privacy interests.

130. In failing to protect Plaintiffs' and Class members' Personal Information, and in disclosing Plaintiffs' and Class members' Personal Information, Defendant acted with malice and oppression and in conscious disregard of Plaintiffs' and Class members' rights to have such information kept confidential and private.

131. Plaintiffs seek injunctive relief on behalf of the Class, restitution, and all other damages available under this Count.

**COUNT VI**

**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

132. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

133. This claim is pleaded in the alternative to the implied contract claim.

134. Defendant profited and benefited from collecting, using, and retaining Plaintiffs' and Class members' Personal Information in connection with their employment relationship and Defendant's business operations, while failing to adequately safeguard that information.

135. Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiffs and Class members did not receive services of the quality, nature, fitness, or value represented by Defendant and that reasonable consumers expected.

136. Defendant has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiffs and Class members.

137. Equity and justice militate against permitting Defendant to retain these profits and benefits.

138. Plaintiffs and Class members suffered injury as a direct and proximate result of Defendant's unjust enrichment and seek an order directing Defendant to disgorge these benefits and pay restitution to Plaintiffs and Class members.

**COUNT VII**
**Violations of the California Unfair Competition Law,**
**Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL")**
**(On Behalf of Plaintiffs and the Nationwide Class)**

139. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

140. Defendant's conduct constitutes unfair, illegal, and fraudulent business practices within the meaning of the California Business & Professions Code § 17200, *et seq*. (the "UCL").

141. By engaging in the said conduct in the course of doing business within California, Defendant engaged in unlawful business practices in violation of the UCL as to Plaintiffs and all Class members.

142. By engaging in the above-described conduct in the course of doing business, Defendant engaged in unfair business practices in violation of the UCL because the harm to Plaintiffs and Class members outweighed any utility that Defendant's conduct may have produced.

143. Defendant's failure to disclose information concerning the Data Breach directly and promptly to affected employees constitutes a fraudulent act or practice in violation of the UCL. Defendant's failure to adequately protect Plaintiffs' and Class members' Personal Information, despite assurances that it would do so and that Defendant met industry standards for data security, also constitutes a fraudulent act or practice in violation of the UCL.

144. Plaintiffs and Class members suffered injury in fact as a result of Defendant's conduct.

145. Individually and on behalf of the Class, Plaintiffs seek injunctive relief, restitution, and all other damages available under this cause of action.

**PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of the Class, by and through undersigned counsel, respectfully request that the Court grant the following relief:

A. Certify this case as a class action and appoint Plaintiffs as class representatives and undersigned counsel as class counsel;

B. Award Plaintiffs and Class members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C. Award declaratory and injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D. Award Plaintiffs and Class members pre-judgment and post-judgment interest to the maximum extent allowable;

E. Award Plaintiffs and Class members reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Award Plaintiffs and Class members such other favorable relief as allowable under law or equity.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 7, 2026

Respectfully submitted,

*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
Yufei Wang (SBN 346170)
*ywang@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521

Telephone: 310.474.9111
Facsimile: 310.474.8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: 917.336.0171
Facsimile: 917.336.0177

*Attorneys for Plaintiffs and the Proposed Class*